**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CURTIS LEE WATSON,                          *

Plaintiff                                    *

v                                            *          Civil Action No. ELH-18-3840

UNITED STATES PROBATION OFFICE,             *
WILLIAM HENRY,
BRETT BJORK                                  *

Defendants                                   *

***

**MEMORANDUM**

The self-represented plaintiff, Curtis Lee Watson, a federal parolee, has filed a "Civil Rights Complaint," with exhibits, contesting his federal parole supervision. ECF 1. He has named as defendants the United States Probation Office; William Henry, who was the Chief of that office in the District of Maryland at the time suit was filed; and Probation Officer Brett Bjork. *Id.* I shall sometimes refer to the defendants collectively as the "Government."

Defendants responded to the suit, ECF 11, with exhibits. In their response, defendants assert that ECF 1, which they characterize as a Petition For Writ of Habeas Corpus, "should be summarily denied." *Id.* at 11.[1] Watson did not reply. Instead, he moved for summary judgment (ECF 12), which defendants oppose. ECF 13. Watson replied. ECF 14.[2]

_____

[1] This Memorandum uses the pagination assigned by the CM/ECF system.

[2] Watson also filed a motion for an order from this Court to prohibit the Social Security Administration from stopping his monthly social security benefits. ECF 10. The Social Security Administration is not a party to this action and the relief he requests, documentation of the dates of his incarceration, is not available from this court. Watson may contact the Bureau of Prisons to obtain this information.

No hearing is necessary for the disposition of these matters.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, I shall deny ECF 10 and ECF 12.  And, I shall deny the Petition (ECF 1).

## I.     BACKGROUND

### A.

Watson, a Maryland resident, is seeking declaratory relief reflecting that he has completed his parole supervision for convictions in Washington, D.C. and the United States District Court for the Eastern District of Virginia.  ECF 1 at 2.  Although Watson titled his suit as a "Civil Rights Complaint" (ECF 1) in substance it appears to constitute a petition for writ of habeas corpus.  *See Castro v. United States*, 540 U.S. 375, 382 (2003); 28 U.S.C. § 2241.

"Numerous courts have treated § 2241 as the appropriate vehicle for individuals who, like Petitioner, are D.C. Code offenders challenging the decision of the USPC to revoke their supervised release or parole." *Alston v. Stewart*, JKB-17-1339, 2018 WL 1069360  (D. Md. February 27, 2018) (collecting cases); *Watson v. U.S. Parole Commission*, 869 F. Supp.2d 145, 149-150 (D. D. C. June 26, 2012) (observing that a petition for a writ of habeas corpus was the proper avenue for relief because Watson cannot bring a civil action for declaratory judgment to obtain his release from custody).

I shall therefore construe ECF 1 as a habeas corpus petition.

### B.

Watson was sentenced on August 10, 1978, in the District of Columbia Superior Court, to a term of 30 years to life for assault with intent to kill, carrying a pistol without a license, first degree murder while armed, and burglary while armed.  ECF 1 at 1; *see also* ECF 1-1; ECF 11 at 1; ECF 11-1.

In 1988, while Watson was serving his D.C sentence in a prison located in Virginia, he escaped. ECF 1. Watson was arrested in Arizona in 1995, and on March 15, 1996, in the United States District Court for the Eastern District of Virginia, he pleaded guilty to escape, in violation of 18 U.S.C. § 751. ECF 1; ECF 1-1. For that offense, he was sentenced to a consecutive term of incarceration of twelve months. ECF 1-1 at 3. Watson asserts that he was to receive "credit for the time held on the warrant." ECF 1 at 2. Further, he claims that in 2001, "with the closing of the D.C. facility in Lorton Va, [he] was placed in the custody of the federal prison system…." *Id.*

Watson claims that on December 9, 2007, he was paroled on "the one year federal term," but his parole was later "rescinded," and his D.C. sentence was reinstated. ECF 1 at 2.[3]

Defendants assert that the U.S. Parole Commission ("USPC" or "Commission") paroled Watson on or about September 8, 2017. ECF 11 at 2; ECF 11-2 at 2. The Certificate of Parole provides that Watson will remain under parole supervision for life. ECF 11-2 at 3; *see also* 18 U.S.C. § 4210(a) ("A parolee shall remain in the legal custody and under the control of the Attorney General, until the expiration of the maximum term or terms for which such parolee was sentenced…").[4]

---

[3] Watson's allegation about his parole hearings is unclear. After hearings in 2004 and 2007, the United States Parole Commission determined Watson's parole eligibility date to be April 27, 2012. At a hearing in November 2012, the Commission denied parole and set a reconsideration hearing for October 2014. *Watson v. O'Brien*, Civil Action No. 1:14CV114, 2015 WL 1038989 (D. N.D W. Va. March 10, 2015).

[4] As the Government explains, ECF 11 at 2, n.1, this provision and other provisions concerning parole from federal convictions (18 U.S.C. §§ 4201-4218) were repealed by the Sentencing Reform Act of 1984, Title II, ch. II of Pub. L. 98-472, § 218(a)(5), 98 Stat. 1837, 2027, which created the United States Sentencing Commission and federal sentencing guidelines. Supervised release replaced parole, and the conditions for supervised release and its revocation are determined by the courts, rather than the USPC. The Act abolished the Parole Commission, and the parole laws were to be abolished five years after the effective date of the Sentencing Guidelines, but they were to remain in effect for individuals convicted of a federal offense before November 1, 1987. *See id.* § 235(n). Congress subsequently extended the abolishment, by way

## II.    DISCUSSION

Watson's allegations are difficult to discern, but he seems to assert that he is no longer on supervision in any capacity since he has served the one-year sentence arising out of his conviction from the U.S. District Court for the Eastern District of Virginia.  He argues that defendants "must now grant this plaintiff his freedom."  ECF 1 at 2.[5]

Defendants argue that Watson's Petition fails for two reasons.  ECF 11 at 2.  First, to the extent that Watson challenges the length of his parole, the Government asserts that he has not exhausted his administrative remedies.  *Id.*; *see* 28 C.F.R. § 2.95; ECF 11-3.  Second, defendants assert that, "absent violation of some constitutional, statutory, or regulatory restriction, the substance of U.S. Parole Commission's decisions are unreviewable."  ECF 11 at 2.  Watson did not file an opposition.  Rather, he filed a motion summary judgment, arguing that, by placing him on parole for life, the USPC violated the Ex Post Facto Clause of the Constitution.  ECF 12.

---

of the United States Parole Commission Extension Act of 2018, Pub. L. 115-274, 132 Stat. 4160 (Oct. 31, 2018).

Notably, the functions of the District of Columbia Board of Parole were assumed by the USPC.  D.C. Code Ann. § 24-131(a)(1) provides: "Not later than one year after August 5, 1997, the United States Parole Commission shall assume the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code."

[5]  Watson has raised ex post facto arguments in other federal courts without obtaining a decision in his favor. *See Watson v. Warden, FCI-Hazelton,* Civil Action No. 2:16cv76, 2017 WL 9565829) (N.D. W. Va.  April 5, 2017); *Watson v. O'Brien,* Civil Action No. 1:14CV114**.** 2015 WL 1038989 (D. N.D W. Va. March 10, 2015); *Watson v. Warden*, *FCC Coleman–USP* I, No. 5:12CV491–OC–27PRL, 2015 WL 78775, at *4 (M.D. Fla. Jan. 6, 2015; *Watson v. United States Parole Comm'n,* 869 F.Supp.2d 145, 150 (D.D.C.2012).

### A. Petition

### 1. Exhaustion

Courts typically require a petitioner to exhaust his administrative remedies prior to filing

for federal habeas relief under 28 U.S.C. § 2241. *McClung v. Shearin*, 90 F. App'x 444, 445 (4th

Cir. 2004); *Timms v. Johns*, 627 F.3d 525, 530-31 (4th Cir. 2010); *Moscato v. Federal Bureau of*

*Prisons,* 98 F.3d 757, 760 (3rd Cir. 1996) (citing cases). Reliance on the administrative exhaustion

requirement provides for development of a factual record, allows the appropriate agency to apply

its expertise, and permits agencies to grant requested relief, thereby conserving judicial resources.

*Jones v. Bock*, 549 U.S. 199, 207 (2007); *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Where judicial

intervention is required, it facilitates the court's review. *See Wright v. Warden,* FCI–Cumberland,

Civ. No. RDB–10–671, 2010 WL 1258181, at *1 (D. Md. March 24, 2010). The exhaustion

requirement may be excused, however, where compliance would be futile. *Id.; Garza v. Davis*,

596 F.3d 1198, 1203 (10th Cir. 2010).

The USPC may "terminate a parolee's supervision, and legal custody over the parolee,

before the sentence expires," either on its own motion or "upon request of a parolee." *See* 28

C.F.R. § 2.95. Watson, however, has made no such request. *See* ECF 11-3, Declaration of Gregory

Thornton, ¶ 4 ("To date, Mr. Watson has not administratively requested that the USPC terminate

his parole early pursuant to 28 C.F.R. § 2.95."). Because Watson failed to make an administrative

request that the USPC terminate his parole, he has not exhausted his administrative remedies.

Moreover, Watson does not assert that he has fully availed himself of his administrative remedies

or that doing so would be futile.

### 2.    USPC's Discretion

Defendants also contend that the USPC determination at issue is a matter committed to agency discretion, and is not subject to judicial review, absent a violation of a constitutional, statutory, or regulatory restriction.

Section 4218(d) of 18 U.S.C. provides:   "Actions of the Commission pursuant to paragraphs (1), (2) and (3) of section 4203(b) shall be considered actions committed to agency discretion for purposes of section 701(a)(2) of title 5, United States Code."

Section 4203 of 18 U.S.C., titled "Powers and duties of the Commission," is also relevant. Section b states, in part:

> The Commission, by majority vote, and pursuant to the procedures set out in this chapter shall have the power to—(1) grant or deny an application or recommendation to parole any eligible prisoner;…(3) modify or revoke an order paroling any eligible prisoner…

In addition, the USPC may "terminate supervision over a parolee prior to the termination of jurisdiction under section 4210."  *See* 18 U.S.C. § 4211(a).

"Under the Parole Act,[6] the court's review of certain decisions by the USPC is limited." *Kennedy v. U.S. Parole Commission*, Civil Action No. CCB-14-1435, 2015 WL 641330  (D. Md. February 13, 2015).  The Parole Act vests the decision to grant, modify, or revoke parole in the discretion of the Commission.  *See* 18 U.S.C. § 4218(d).  As indicated, it confers broad authority on the USPC to "terminate supervision over a parolee prior to the termination of jurisdiction under section 4210."  *See* 18 U.S.C. § 4211(a).

"Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated

---

6 *See* 18 U.S.C. §4218(d); *see also* 18 U.S.C. § 4203(b).  As noted earlier, these laws apply to offenders convicted of a federal offense before November 1, 1987.

constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself." *Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir.1981) (citing *Ness Inv. Corp. v. U.S. Dep't of Agric*., 512 F.2d 706, 715 (9th Cir.1975)).   These discretionary decisions "are unreviewable even for abuse of discretion." *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 982 (9th Cir. 2002).

The decision whether to permit early termination of supervision is committed to the discretion of the Commission.  *See Mitchell v. U.S. Parole Comm'n*, 538 F.3d 948, 951 (8th Cir.2008) ("[U]nder section 4211(c)(1), parole remains subject to the Commission's discretionary finding of rehabilitation...."); *Valona v. U.S. Parole Comm'n*, 235 F.3d 1046, 1048 (7th Cir. 2000) (explaining that 18 U.S.C. § 4211(c)(1) "effectively hands discretion to the Parole Commission"). Thus, to the extent Watson is asking for relief that requires review of a USPC decision to modify or terminate parole, he is seeking review of a decision "left to the Commission's exercise of judgment." *See Kennedy v. Reilly,* L-09-1802, 2010 WL 761204, at * 3 (D. Md. March 1, 2010). As will be discussed below, Watson's assertions of an ex post facto violation are without merit and thus provide no basis for review of the USPC determination.

## B.  Motion for Summary Judgment

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Iraq Middle Mkt. Dev. Found. V. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit…." *Id.* at 248.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. U.S. Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; accord *Guessous v. Fairview Prop. Inv., LLC,* 838 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment.  *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Watson is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, "liberal construction does not absolve plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014); *aff'd*, 584 F. App'x 135 (4th Cir. 2014).

The Ex Post Facto Clause prohibits retroactive application of a law that increases the punishment for a crime that an individual has already committed. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) ). *See* U.S. Const. Art. I, § 9 ("No ... ex post facto Law shall be passed."). "One function of the Ex Post Facto Clause is to bar enactments, which by retroactive operation, increase the punishment for a crime after its commission." *Garner v. Jones*, 529 U.S. 244, 249 (2000) (citations omitted). To be successful, a petitioner must first show that there has been a change in law or policy that was given retrospective effect. *Shaffer v. Meyers*, 163 F. App'x. 111, 113 (3d Cir. 2006). Watson has not met his initial burden.

Watson claims that holding his federal parole hearings "at anytime after his sentence in 1978 not only violated" his "rights but it also caused an additional elongated term of imprisonment, notwithstanding the federal parole was abolished…." ECF 14 at 1. But, Watson does not explain

why his parole hearings abridged the proscription against ex post facto laws, how his "term of imprisonment" was unlawfully extended, or address the term of his parole supervision, *i.e.*, for life. Having failed to identify any retroactive law that increased the punishment for his offense, Watson provides no basis for summary judgment in his favor.

Watson's reliance on *Peugh v. United States*, 569 U.S 530, 533 (2013), and *Daniel v. Fulwood*, 766 F.3d 57 (D.C. Cir. 2014).

In *Peugh*, the Supreme Court held the  Ex Post Facto Clause is violated when a defendant is sentenced under the Sentencing Guidelines promulgated after he committed his criminal acts and the new version provides a higher sentencing range than the version in place at the time of the offense.  *Peugh*, 569 U.S at 533.  The facts Watson alleges are readily distinguishable from those in *Peugh*, as he does not assert, nor does the record suggest, that he was sentenced at a higher range than applicable at the time he committed his offense.

*Daniel* involved a class action filed by District of Columbia inmates who alleged that retroactive application of parole regulations to prisoners convicted prior to issuance of those regulations violated the Ex Post Facto Clause, and that they were deprived of fair parole review hearings, in violation of Due Process Clause.  The United States District Court for the District of Columbia dismissed the complaint, and the United States Court of Appeals for the District of Columbia reversed, holding that the inmates had stated a plausible claim.  *Daniel*, 766 F.3d at 66-67.  In *Daniel,* the court did not announce a new rule of law  Rather, it simply reiterated the well-established principle that retroactive changes in laws governing parole of prisoners are violative of the ex post facto clause only when they "create[ ] a significant risk of prolonging [a prisoner's] incarceration."  *Watson v. O'Brien, Civil Action* No. 1:14CV114 (N.D W. Va. March 10, 2015 (citations omitted).

Other federal courts have also found Watson's ex post facto argument unavailing. *See Watson v. United States Parole Comm'n*, 869 F.Supp.2d 145, 150 (D.D.C.2012) (concluding that Watson's ex post facto claim is "meritless" because "the Court cannot conclude that [Watson] would have fared better under a prior regime"); *Watson v. Warden*, FCC Coleman–USP I, No. 5:12CV491–OC–27PRL, 2015 WL 78775, at *4 (M.D. Fl. Jan. 6, 2015) (determining that "[Watson's] ex post facto claim is without merit" because "the application of the 2000 guidelines to [Watson's] parole does not create a significant risk of a longer period of incarceration than under the earlier regulations").

In light of the above, Watson's summary judgment motion will be denied.

### III.   CONCLUSION

For the reasons set forth above, Watson's Petition (ECF 1), motion for an order (ECF 10), and motion for summary judgment (ECF 12) will be denied.[7]  A separate Order follows.

_____April 17, 2020_____               _____/s/_____
Date                                                    Ellen L. Hollander
                                                           United States District Judge

---

[7] Based on the disposition, I need not address the Government's claim that Henry and Bjork were "inappropriately included" as defendants.